and Mr. Horowitz whenever you're ready. Thank you. Good morning, your honors. May it please the court. My name is Joshua Horowitz and I represent the movant appellant Michael Xirinachs on this motion for bail pending appeal. I would like to point out initially that Mr. Xirinachs is present. He's here in the courtroom, seated in the back here. As the court is well aware, the standard on a motion for bail pending appeal is that we must demonstrate that the appellant does not present any risk of flight or risk of danger. The government is not disputing that in this case. And then the second prong of this is that the appeal raises a substantial question that is likely to result in reversal, a new trial, or potentially a reduced sentence. And then the third sort of a two-part prong that must be shown is that the appeal is not for purposes of delay. Now, this court has previously defined a substantial question as a close, novel, or even fairly debatable question, and that was in United States v. Randell in 1985. The substantial question that is — there are several, I submit, substantial questions that are presented by this appeal. And first and foremost, that is the application of the United States Supreme Court's most recent decision in Estaris v. United States, in which the court essentially held that a sentencing court may not consider retribution as a factor in a sentence on a violation of supervised release. Now — Is this case supervised release or furlough? Well, it's an interesting question, Your Honor, because there are parts of the judgment from the court below which say that the sentence is — it was a sentence of probation. However, the language of the judgment, and specifically when talking about nonpayment of restitution, says that nonpayment of restitution would be considered a violation of supervised release. And so — Right, but that doesn't change — I mean, the sentence that he served or was initially serving was, in fact, a sentence of probation, correct? I would submit that — and also, given the similarities between how probation and supervised release are essentially — They're not similar, no. Well — Section A.2 is the one that you're referring to here, that a judge on supervised release is not permitted to go back and revisit the original sentence. It must be just for the violation of the supervised release. But if it's revocation of furlough, then you are having a resentencing of the original case in which all of the three 5A factors can be considered, including the conduct underlying the original offense. And that — Do you agree with what I've just said? I do, Your Honor. That is — Why isn't that true here? Well, again, the language of the judgment from the court below says that a nonpayment of restitution will be treated as a violation of supervised release. It doesn't say that this is a — that it's a condition — It could also be a violation of probation, couldn't it? It could. And that's also referred to in the papers. It could, but again — It's also referred to in the papers. You know, the judge was — arguably, the judge made a mistake in calling it supervised release. Well — But there's no question about what was happening, really, about that it was a revocation of probation. I — He was on probation, not on supervised release, and was ordered to make restitution. And then when he was brought in for a violation of the probation, he then was — was resentenced under the rules that apply to revocation of probation. But — Is there any question about any of that? Again, the question is — Apart from the fact that there's some statements in the record about supervised release. I would submit that based on the — Would you get back to the district court to determine whether this was a revocation of probation or a violation of supervised release? Well, I — That would be kind of silly, wouldn't it? I disagree. I don't think it would be silly. I think that the fact that the judgment and that there are multiple references in the proceeding below to a violation of supervised release, that this sentencing should have been treated — that certainly with respect to the nonpayment of restitution, which was the core issue in the sentencing, should have been treated as a violation of supervised release. And one of — you know, part of the reason for that is that the — again, when somebody is supervised by probation, whether it's on a probationary sentence or a sentence for supervised release, it is almost exactly the same in terms of the actual supervision. Like, the person under supervision, you know, wouldn't even necessarily feel — In other words, we should — if we were to write an opinion here, should we hope that there's never a difference between probation and supervised release? I'm not — I'm not suggesting that, because there certainly is a difference in — and as Your Honor pointed out, exactly with this statutory sentencing scheme on a violation of probation, that it's — you know, it is different from a violation of supervised release. But again, I submit that based on the language in the judgment, there is a question here as to whether asteris, which would have precluded the district court from considering the 3553a to a factors in sentencing, whether that should have applied. I'd like to move to another issue, which are the factual issues. Based on the district court's findings of sort of the underpayment of restitution by Mr. Zirinax, I submit that there are — the court's figure was grossly overstated. But hasn't your client accepted the fact that there were — there was cash on hand that exceeded the $250 limit, that by applying the percentages would have exceeded the $250 limit, and that he did not pay the higher amount, but paid the — There's no dispute here that there was some underpayment of restitution, but I think that there's a difference between, say, you know, a $15,000 or $20,000 underpayment versus a — All we're looking at here is not — it's not a question of de minimis argument here. It's really a question of whether or not there was a violation of any kind that would trigger a re-sentencing. Well, I still — I submit that based on the record that was before the district court, its calculations that — obviously, it relied upon heavily in sentencing Mr. Zirinax to a 30-month term of imprisonment, which, you know, frankly, is excessive in my view. Where does that fit in on the guideline range? Well, correct. It is below the guideline range. I just very briefly — I think the district judge felt that she had given him a break and would allow him to make restitution in lieu of going to prison, and that when that did not occur and he didn't follow the rules, that she realized that she couldn't trust this guy, and therefore it was going to go back — she was going to go back for a different kind of sentence, a sentence that wasn't — wasn't so good. I still submit that — and again, this would be an issue that we would brief on appeal — that this sentence was excessive. Very briefly, because I see my time is running out, I just very briefly want to address the government's appellate waiver argument. The language that is in the appeal waiver, again, and this Court has repeatedly held that the language in an appeal waiver is strictly construed against the drafter, which is the government, in this case, as it is in every case. And the plea agreement — the appeal waiver language in the plea agreement does not at all contemplate a waiver of appeal on a resentence for a probation violation. And so the government, you know, repeatedly throws up this appellate waiver as an obstacle, and I submit that strictly construing the terms of the plea agreement, these issues have not been waived. And, you know, very — just to close, this — the government also keeps saying that this appeal is for purposes of delay. There is no — obviously, you know, this is a person who was initially sentenced to a noncustodial term of imprisonment. He — you know, he has a lot of personal and significant issues that are going on in his life. And for him to now face a 30-month sentence without — if he were to have to serve out his sentence while this appeal is pending, I submit that it would be — it would be unjust for him to be required to wait out this appeal while serving a prison sentence. And so this is not for delay. It is — there are real issues here, and that's — that's what I have. Thank you, Your Honor. All right. Thank you. May it please the Court. Sean Sherman on behalf of the United States. Your Honors, this case has nothing to do with supervised release. The defendant was not initially sentenced to supervised release of any term. He was sentenced to probation, three years. The defendant did not violate supervised release. He violated probation. In the record is a violation of probation report. The district court did not revoke a term of supervised release. It revoked a term of probation. Throughout the revocation hearing, there are dozens of references to this as a violation of probation. That's at pages 2, 5, 6, 9, 10. In one instance — There are some references to supervised release, though, aren't there? Your Honor, there are a few references, absolutely, stray references, to supervised release. And there are some orders in the ECF docket entries that refer to supervised release. The government would submit these are clerical errors, and that the appropriate correction, if one needed to be made, would be under Federal Rule of Criminal Procedure 36 to correct those errors. But there is no basis for confusion here. The judgment was a judgment for a term of probation. That's docket number 30, the underlying violation. I'm sorry, the underlying judgment. And it says you are hereby sentenced to probation for a term of three years with special conditions. And then there is a page of special conditions, including the restitution. Now, it does say that a violation of restitution, as, you know, counsel has noted, would be a violation of supervised release. But the government submits that as just an error, and there is no supervised release here. It wouldn't make sense any other way. And throughout all of the proceedings, there has been a consistent reference to this being probation. And fundamentally, getting back to what that's about, right, the references to supervised release, inadvertent, clerical, they cannot convert what is a probation proceeding, which is under one statute, the statute that the Supreme Court said, in fact, requires the district court to consider all the 3553A factors, right? It can't be that just by an inadvertent reference to supervised release, that now we're in supervised release territory where the district court, rather than complying with what the Supreme Court has said, has expressly violated it. And so we think that with respect to this initial substantial question of law, it just isn't an issue. With respect to the question of fact, the district court's determination here about the underpayment, first, it was substantially supported by the record. The court makes it clear and detailed its reasoning here. And in fact, there is really no dispute that there was an underpayment. The defendant allocuted to being to an underpayment. And here, counsel has again stated, as they must, that there was an underpayment of restitution. Now, the district court did go into some detail about the different ways it reached a conservative estimate of the underpayment. But as the court made clear, the reason it did that was in order to explain its rationale that these violations were willful. And the willfulness was among the 35. What was the – remind me again. What was the difference was between the two positions on the amount of the underpayment? Did the defendant admit to, like, $50,000 underpayment? And the court and the government's position was that there was more than that, like it was $150,000 or something. Your Honor, I believe the defendant admitted to around $48,000. The government's position was that it was around $100,000. The district court concluded that a conservative estimate was around $240,000. And that is in the sentencing hearing at page 80, as well as the district court's memorandum opinion with an appendix laying out the chart for how the court reached that conclusion. But the district court very plainly stated that the amount that it had reached as a conservative estimate had no impact. The court stated no impact on its reasoning, and instead that this was just the basis for willfulness. The defendant also waived his right to a fatico hearing to contest the underlying amount of the repayment. And most importantly, the calculation of that underpayment did not affect the guidelines ranges here, either the 41 to 51 months, which was based on the underlying violations, or the probationary amount. And so, you know, under this court's clear precedent, whereas here the sentence is below the original guidelines range of 30 months and the guidelines range was 41 to 51 months, right, that is highly unlikely to be found to be unreasonable. And so even if the court were to conclude that there was a clear error by the district court, that would not be a basis for reversal. And so, therefore, that is not a basis. It's not a substantial question. It's not a close question for bail pending appeal here. If there are no further questions, the government would rest on its papers. All right. All right. Thank you very much. Thank you both. We will take the motion under advisement.